# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| PROGRESSIVE HAWAII ) | |
| INSURANCE CORP. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-cv-02078-STA-egb |
| ) | |
| JOSHUA SKIBA, TIFFANY GAMBLE, ) | |
| and STEVEN HOLMES ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Progressive Hawaii Insurance Corp. ("Progressive") brought this declaratory judgment action seeking a declaration that it is not obligated to provide coverage under a policy held by Defendants Joshua Skiba and Steven Holmes for injuries allegedly sustained by Defendant Tiffany Gamble in an automobile accident. (ECF No. 1.) Before the Court is Plaintiff's Motion for Summary Judgment filed on September 6, 2016. (ECF No. 31.) Tiffany Gamble has filed a response (ECF No. 35), to which Plaintiff has replied (ECF No. 36), making the matter ripe for adjudication.[1] For the reasons set forth below, the Motion is GRANTED. The parties have also filed a joint motion to continue the trial date. (ECF No. 42.) Because the

---

[1] Neither Joshua Skiba nor Steven Holmes filed answers or appearances after being served with a summons and a copy of the complaint. Plaintiff moved for entries of default pursuant to Federal Rule of Civil Procedure 55 (ECF Nos. 16–17), and the clerk entered default as to both Skiba and Holmes (ECF Nos. 18–19). Because only Gamble has appeared in this lawsuit, the Court uses the word "Defendant" hereinafter to refer to her individually.

grant of summary judgment dispenses with this case without a trial, that motion is DENIED AS MOOT.

I.  BACKGROUND

The following facts are undisputed unless otherwise noted.  (*See* ECF Nos. 35-2 & 36 at 1–6.)  On March 3, 2015, Steven Holmes and Joshua Skiba of Union City, Tennessee purchased an automobile insurance policy, underwritten by Plaintiff, through the Alexander Insurance Group.  (*See* ECF No. 1-1.)  Alexander Insurance Group is an independent insurance agency that sells policies for multiple insurance companies.  (Alexander Dep., ECF No. 35-2 at 37:14–24.)  The terms, conditions, and limitations of the policy were set forth in a policy agreement.  (ECF No. 1-1 at 2–37.)  Both Skiba and Holmes were listed on the policy, the latter as an excluded driver.  The effective dates of coverage for the policy ran from March 3, 2015, through September 3, 2015, subject to renewal.  The premiums for the policy were to be paid in monthly installments on the fourth day of each month by automatic electronic funds transfer from the insureds' bank account.

This arrangement progressed without incident until July 15, 2015, when Plaintiff received a notice of insufficient funds after it attempted to debit Holmes and Skiba's account for the monthly premium payment.  The next day, Plaintiff sent an email to Joshua Skiba informing him that the insurance policy would be canceled on July 27, 2015.  (*See* ECF No. 1-1 at 45.)  Plaintiff also prepared a written notice of cancellation, but Defendant disputes whether this and several other documents were ever mailed to Skiba and Holmes, asserting that their address had changed from the one Plaintiff had on file.  (ECF No. 35-2 at 2–4.)  Plaintiff also created a "final bill," dated July 28, 2015, stating that the policy was canceled but an outstanding balance of $76.92

remains. (ECF No. 1-1 at 44.) Defendant also disputes that this document was ever mailed to and received by the insureds.

On August 11, 2015, Holmes or Skiba[2] went to the office of the Alexander Insurance Group to reinstate the policy, armed with a check for $121.60. There he spoke with Roger Alexander, who accepted the payment on Plaintiff's behalf. Alexander and Skiba both apparently believed that the payment had successfully reinstated the canceled policy. Once the payment had been entered into Plaintiff's online system, however, Plaintiff credited the outstanding balance of $76.92 and refunded the remainder back to Holmes and Skiba's account.[3] Neither Holmes nor Skiba made any subsequent payments to Plaintiff, and Plaintiff did not attempt to withdraw any more payments from their account via electronic funds transfer.

---

[2] There appears to be some confusion as to whether it was Skiba or Holmes who made this payment, as Plaintiff's Statement of Undisputed Material Facts states that it was Holmes (ECF No. 33 at 3), while Defendant's Response, without specifically disputing that assertion, uses Skiba's name (ECF No. 35-2 at 5). (*See also* ECF Nos. 32 at 2 & 35-1 at 2 (same inconsistency in the memoranda related to the instant motion)). Because this discrepancy is immaterial to the issues discussed in this Order, the Court need not resolve it here, but for the sake of consistency, will use Skiba's name, which Roger Alexander uses in his deposition when referring to this event. (*See* ECF No. 35-2 at 38.)

[3] Plaintiff included in its Statement of Undisputed Material Facts the assertion that "[o]n August 23, 2015, Progressive refunded the balance of the $121.60 paid by Mr. Holmes, accounting for the $76.92 owed in back premium." (ECF No. 33 at 3.) Defendant's response states only that it is "[u]ndisputed for the purposes of summary judgment that Progressive retained money paid by Joshua Skiba on August 11, 2015." (ECF No. 35-2 at 4.) Local Rule 56.1(b) provides that a response to a statement of undisputed material facts must either "agree[] that the fact is undisputed" or "demonstrat[e] that the fact is disputed" with a specific citation to the record. "Failure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment." W.D. Tenn. R. 56.1(d). Because Defendant failed to specifically dispute the above facts and provide a citation to the record in support, the Court treats her incomplete response as an admission that those facts are undisputed. The Court also notes that Plaintiff has filed in the record a transaction history regarding Skiba and Holmes' policy. (ECF No. 1-1 at 40.) An entry in that document lists a disbursement of $44.68 on August 23, 2015, providing evidentiary support for Plaintiff's contention that money was indeed refunded back to Holmes and Skiba. (*Id.*)

On November 12, 2015, Joshua Skiba and Tiffany Gamble were involved in an auto accident in Fulton County, Kentucky. Gamble was a passenger in an automobile driven by Skiba. Gamble filed a claim with Plaintiff soon after, seeking compensation for injuries she allegedly suffered in the accident, under the policy held by Holmes and Skiba. Plaintiff contends that it is not obligated to provide coverage for this claim because the policy had been previously canceled. Defendant argues that the policy had been successfully reinstated and was in effect on the date of the accident. On February 4, 2016, Plaintiff filed this action under the Federal Declaratory Judgment Act seeking a declaration of rights, obligations, and legal relations vis-à-vis itself and all three Defendants. (ECF No. 1; *see* 28 U.S.C. §§ 2201–02.)

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations []or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). The Court must also draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on its pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

These facts must be more than a scintilla of evidence and must meet the standard of

whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. ANALYSIS

A district court sitting in diversity must apply the law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In this case, "[j]urisdiction is based on diversity of citizenship and the law of Tennessee controls." *Rolane Sportswear, Inc. v. U. S. Fid. & Guar. Co.*, 407 F.2d 1091, 1094 (6th Cir. 1969). In Tennessee, "[a]n insurance policy is a contract of adhesion drafted by the insurer," *Bill Brown Constr. Co., Inc. v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 12 (Tenn. 1991), and is subject to the same rules and canons of construction as other contracts, *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012) (citations and internal quotation marks omitted). A policy "should be construed as a whole in a reasonable and logical manner." *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 306 (Tenn. 2007) (internal quotation marks omitted). In this case, the controlling insurance contract is the Tennessee Auto Policy Insuring Agreement, drafted by Plaintiff and agreed to by Holmes and Skiba. (ECF No. 1-1 at 2–37.) "'[T]he insured is conclusively presumed to have knowledge of, and to have assented to, all the terms, conditions, limitations, provisions or recitals in the policy,'

irrespective of whether the insured actually read, or could read, the insurance contract." *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 274 (Tenn. 2001) (quoting *Gen. Am. Life Ins. Co. v. Armstrong*, 185 S.W.2d 505, 507 (Tenn. 1945)) (emphasis omitted).

### A. Initial Cancellation of the Policy

The policy terms make clear that Plaintiff "may cancel this policy during the policy period by mailing a notice of cancellation to the named insured shown on the declarations page at the last known address appearing in [its] records." (ECF No. 1-1 at 32.) If the reason for the cancellation be nonpayment of a premium, the agreement requires ten days' notice. (*Id.*) Plaintiff adhered to this time period by waiting until July 27, 2015, to formally cancel the policy after notifying Skiba and Holmes on July 16. (*See id.* at 44–46.)

There exists a dispute between the parties as to whether Plaintiff fulfilled the mailing requirement. In her Response to Plaintiff's Statement of Undisputed Material Facts, Defendant "disputes whether this notice [of cancellation] was ever actually mailed and received by Joshua Skiba and/or Steven Holmes as their mailing address had changed." (ECF No. 35-2 at 3.) As is required by the Local Rules, this discrete response includes a citation to the record: a page from the deposition of Roger Alexander. (*Id.*) The portion cited to appears below:

> Q. All right. And Mr. Skiba, you testified I believe moved from the 1405 High address to a Fifth Street address somewhere in the mix?
>
> A. We've learned that, yes.

(ECF No. 35-1 at 48:22–25.) While this testimony may contradict the allegation that Skiba and Holmes received the notice, it does nothing to dispute the separate contention that Plaintiff mailed it, which is all the policy agreement requires. (*See* ECF No. 1-1 at 32.) Plaintiff supported the latter with evidence, providing both a copy of the document (ECF No. 33 at 11–

12) and the affidavit of Debra Henry (*Id.* at 7–9), which states that "[o]n July 16, 2015 a notice of cancellation was mailed to both insureds at 1405 E. High Street, Union City, TN, the address listed on the declarations page setting the policy to cancel at 12:01 a.m. on July 27, 2015."[4] (*Id.* at 8.) Defendant has failed to "demonstrat[e] that th[is] fact is disputed." W.D. Tenn. R. 56.1(b)(3). She has not established that a "genuine dispute of material fact" exists under Rule 56 and the Court interprets her unsupported response as an admission that the mailing occurred. *See* W.D. Tenn. R. 56.1(d). Because Plaintiff adhered to the terms of the policy agreement by providing written notice of cancellation after the non-payment of the premium installment and waiting the required ten days before formally canceling the policy, the initial cancellation was effective.

B.  **The Reinstatement Attempt**

Defendant contends that Skiba's visit to the Alexander Insurance Group's office on August 11, 2015, resulted in the reinstatement of the policy. Specifically, Defendant relies on an agency argument, asserting that "[w]hen Alexander, as Progressive's agent, represented to Mr. Skiba that his premium payment was accepted, it did so on behalf of Progressive, and Progressive is further bound by that statement as a matter of law." (ECF No. 35-1 at 5.) The relevant Tennessee statute regarding agency in this setting reads thus:

> An insurance producer who solicits or negotiates an application for insurance shall be regarded, in any controversy arising from the application for insurance or

---

[4] This more than satisfies Tennessee's standard of proof as to this issue. The Tennessee Court of Appeals has held that "in a business where a large number of letters are customarily mailed in a routine fashion, evidence of the custom of mailing, along with a copy of the letter kept in the records of the business, is sufficient to support a finding that the original was mailed." *Blurton v. Grange Ins. & Cas. Co.*, 159 S.W.3d 1, 11 (Tenn. Ct. App. 2004). Indeed, "testimony of one with personal knowledge of the mailing is not necessary to show that the cancellation notice was mailed in due course." *Id.* at 12.

7

> any policy issued in connection with the application between the insured or insured's beneficiary and the insurer, as the agent of the insurer and not the insured or insured's beneficiary. This subsection (b) shall not affect the apparent authority of an agent.

Tenn. Code Ann. § 56-6-115(b). This provision applies to both the renewal of an existing policy and the application for an initial policy, *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 517 (Tenn. 2012), and "is liberally construed in the insured's favor," *Acuity Mut. Ins. Co. v. Frye*, 699 F. Supp. 2d 975, 986 (E.D. Tenn. 2010) (citing *Bill Brown*, 818 S.W.2d at 4). Defendant is therefore correct in her assertion that the employees of the Alexander Insurance Group acted as agents of Plaintiff on August 11, 2015.

The principal/agency relationship in the context of insurance confers significant powers and responsibilities on the agent. For example, "knowledge of an insurance agent will be imputed to the insurance company unless it is plainly indicated that there is fraud and conspiracy between the insured and the company agent, and that the agent will not reveal the true facts to the principal." *Arch Specialty Ins. Co. v. Cline*, No. 10-2114-STA-DKV, 2012 WL 12823706, at *4 (W.D. Tenn. Dec. 4, 2012) (citing *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 146 (Tenn. 1950)). The Tennessee Supreme Court has held that "any contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent." *Bill Brown*, 818 S.W.2d at 13 (emphasis omitted). Certain actions or representations of agents can even broaden insurance coverage. In *Bill Brown Construction Co., Inc. v. Glens Falls Insurance Co.*, the Tennessee Supreme Court held that "an insurer may be estopped to deny coverage for any loss by the misrepresentations of its agent upon which the insured reasonably relies." 818 S.W.2d 1, 12 (Tenn. 1991). Defendant cites this ruling in support of her argument that Alexander's actions

and assurances on August 11, 2015, successfully reinstated the policy and, consequently, bound Plaintiff to honor that reinstatement. (ECF No. 35-1 at 5.)

In response, Plaintiff highlights the longstanding principle that estoppel cannot be used to create a new right, and argues that Defendant's position advocates just that. (ECF No. 36 at 9.) In *Bill Brown*, the Tennessee Supreme Court acknowledged "the difficulty courts have experienced in applying that rule to insurance cases," and chose to take a more nuanced approach. 818 S.W.2d at 12. Noting that the rationale behind the rule is "that an insurer should not be held liable, by estoppel, for a risk for which it received no consideration," the court concluded that "the reasonable reliance of the insured is a legally sufficient substitute for the necessary consideration." *Id.* Accordingly, the doctrines of waiver and estoppel in this context may indeed "have the effect of broadening the coverage of the policy," creating a right where none previously existed. *Id.* at 11.

Defendant may not avail herself of these protections, however, because there was no reasonable reliance on the part of Skiba and Holmes.

> Subsequent Tennessee decisions make clear that the rule of *Bill Brown* applies only where the insured has no knowledge that the agent lacks authority to make representations that would alter the policy terms, and that where the policy states that its terms can be amended or waived only by the company, the insured is charged with that knowledge and a claim for waiver by estoppel will not lie.

*Builders Mut. Ins. Co. v. Pickens*, No. 3:13–cv–00022 (WOB–HBG), 2013 WL 3788225, at *3, (E.D. Tenn. July 18, 2013) (citing *Finchum v. Davenport*, No. M2007–00559–COA–R3–CV, 2008 WL 2019408, at *7–8 (Tenn. Ct. App. May 9, 2008); *Reed v. Nat'l Found. Life Ins. Co.*, No. 03A01–9603–CV–00081, 1996 WL 718467, at *3–4 (Tenn. Ct. App. Dec. 16, 1996)). In this case, Skiba and Holmes had already been put on notice that Alexander lacked the authority

9

to reinstate the policy. The policy agreement contains the following language:

> This policy contract, your insurance application (which is made a part of this policy as if attached hereto), the declarations page, and all endorsements to this policy issued by us, contain all the agreements between you and us. Subject to the following, *the terms of this policy may not be changed or waived except by an endorsement issued by us*.

(ECF No. 1-1 at 30 (emphasis added).) The contract also states that "[t]he coverage provided in your policy may be changed only by the issuance of a new policy or an endorsement by us." *Id.* Elsewhere, it notes that "'[w]e' 'us', and 'our' mean the underwriting company providing the insurance, as shown on the declarations page." (ECF No. 1-1 at 7.)

These policy terms, complete with the circumscribed definition of "us," serve to limit the authority that may be conferred on an agent. This includes the authority to reinstate a policy. The act of reinstatement would have changed the coverage provided by the policy—from none whatsoever to the coverage present before cancellation—and thus falls within the conduct reserved under the policy agreement by Plaintiff. Under Tennessee law, Skiba and Holmes are "conclusively presumed" to have knowledge of these and all other terms in the policy agreement. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 274 (Tenn. 2001). Because they were previously on notice of these limitations, they could not have "reasonably relied upon" Alexander's assurances that the policy was reinstated.[5] *Bill Brown*, 818 S.W.2d at 13. Plaintiff is therefore not estopped from denying coverage under the policy.

---

[5] It is also worth noting that the "Final Bill" sent to Skiba and Holmes on July 28, 2015, stated that "[i]f you already sent your payment, thank you, but please know that your payment will not reinstate your policy." (ECF No. 1-1 at 44.) While Defendant claims that Skiba and Holmes never received this mailing either (ECF No. 35-2 at 4), and the Court assumes as much for the purposes of summary judgment, it nevertheless shows that Plaintiff did its due diligence in attempting to keep the insureds informed as to the terms of the cancellation.

### C. Subsequent Payment, Renewal, and Continuation Issues

Skiba and Holmes' inaction after the August 11, 2015 visit to the Alexander Insurance Group also stymies Defendant's case. First, neither made any further payments after August 11, 2015. (*See* ECF No. 35-2 at 47:15–21 (Alexander Dep.); ECF No. 1-1 at 40 (transaction history spreadsheet for the policy).) The accident did not occur until November 12. By that time there should have been three more payments, on the fourth day of September, October, and November. Even if the policy had been successfully reinstated, this would have provided Plaintiff with ample grounds to terminate the policy at several points, although it did not do so for obvious reasons. By this point, Skiba and Holmes had been put on notice that the attempted reinstatement had been ineffective. Records of the transaction history for the policy indicate that $44.68 was disbursed back to Skiba and Holmes, the amount of the August 11, 2015 payment minus the previously owed $76.92. This credit occurred on August 23, 2015, months before the accident. (ECF No. 1-1 at 40.) Plaintiff had also stopped automatically withdrawing the monthly premium payment from Skiba and Holmes' account via electronic funds transfer, another red flag.

Moreover, the policy was set to expire on September 3, 2015, unless it was renewed.[6] (ECF No. 1-1 at 52.) The policy agreement states that unless the insured affirmatively accepts an offer to renew the policy, it "will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that [the

---

[6] The affidavit of Debra Henry provides evidence of mailing for the Electronic Funds Transfer Schedule sent on March 3, 2015. (ECF No. 33 at 7.) This document lists the scheduled payments for the then-current policy, to be made on the fourth day of April through August 2015, and lists the policy period as "Mar 3, 2015 - Sep 3, 2015." (*Id.* at 10.) Thus, Plaintiff has specifically shown that Skiba and Holmes had been informed of the policy's scheduled expiration.

insured has] not accepted our offer." (ECF No. 1-1 at 33.) Plaintiff made a valid offer to renew the policy, but Skiba and Holmes did not successfully accept it. (*See* ECF No. 1-1 at 48–49.) The payment on August 11, 2015, completed Skiba and Holmes' financial obligations regarding the six-month policy that ended on September 3. It did not *renew* the policy for another term, regardless of whether it *reinstated* the old policy. Afterward, Plaintiff withdrew no more funds from their account and they made no effort to make further payments. Therefore, the renewal of the policy, which would have extended coverage into the month of November, when the accident occurred, did not transpire.

IV. **CONCLUSION**

By proving that Skiba and Holmes' insurance policy was successfully canceled on July 27, 2015, and never reinstated, Plaintiff has established that no genuine dispute of material fact exists between the parties and that Plaintiff is entitled to judgment as a matter of law. Because the policy was not in effect on November 12, 2015, Plaintiff is entitled to a declaration that it is not obligated to provide coverage for injuries sustained by Defendant on that date. For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED and the parties' Joint Motion to Continue is DENIED AS MOOT.

**IT IS SO ORDERED** this 16th day of May, 2017.

                                                      **s/ S. Thomas Anderson**
                                                      S. THOMAS ANDERSON
                                                      CHIEF UNITED STATES DISTRICT JUDGE